FILED

2016 JUL -7 P 1:04

US DISTRICT COURT
HARTFORD CT

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

RASHAD WILLIAMS         :    CIVIL NO.: 3:13CV01154 (MPS)
V.                      :
MURPHY, ET AL.          :    MAY 13, 2016

## FIFTH AMENDED COMPLAINT

### I. JURISDICTION AND VENUE (B)

1. This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The Court has jurisdiction under 28 U.S.C. Section 1331 and 1343 (a) (3). Plaintiff seeks relief pursuant to 28 U.S.C. Section 2201 and 2202.

2. The Hartford District Court is an appropriate venue under 28 U.S.C. Section 1391 (b) (2) because it is where the plaintiff's case currently resides.

### II. PLAINTIFFS (C)

3. Plaintiff, Rashad Williams, is and was at all times mentioned herein a prisoner of the State of Connecticut in the custody of the Connecticut Department of Corrections. He is currently confined to Cheshire C.I., in Cheshire, CT.

### III. DEFENDANTS (D)

4. MARINELLI
   a. Captain
   b. Northern

5. Saylor

 a. Lieutenant

 b. Northern

6. Lindsey

 a. C.O.

 b. Northern

7. Robinson

 a. C.O.

 b. Northern

8. Jill Haga

 a. Mental Health Worker

 b. Northern

9. Paul Wilbur

 a. Medical nurse

 b. Northern

10. Each defendant is sued individually. At all times mentioned in this complaint each defendant acted under color of the state law. [handwritten: Each defendant is also sued in their official capacity.]

IV. FACTS (E)

11. On or about March, 2010 plaintiff Williams wrote INMATE LEGAL ASSISTANCE about feeling in danger and wanting to be placed on single cell status.

12. Attorney Cahill, with inmate legal assistance, called Northern and spoke to Deputy Warden Powers, who then in turn sent Captain Butkiewicus to interview plaintiff.

13. Plaintiff informed Captain butkiewicus that he felt he was in danger for his life from inmates who were yelling out threats on the tier and calling him a snitch. And that they were gang members.

14. Butkiewicus took no action and dismissed the plaintiff.

15. In May of 2010, plaintiff was seen by mental health professionals, Dr. Frayne and Eileen Reddien, who was sent to try to treat the plaintiff and curb his actions and stop him from receiving disciplinary reports.

16. Plaintiff expressed his concerns about being placed in the cell with someone, and was assured he would remain in a single cell by himself, by Dr. Franye and Eileen Redden.

17. Plaintiff continued to be treated by mental health worker Redden until in the final phase of the A.S. program.

18. On or about the beginning of August, 2010, while in 1-East, cell 217, plaintiff was told by Cpt. Cahill that he needed the double cell plaintiff was occupying, therefore he would be moving plaintiff downstairs to cell 124, since he, Cpt. Cahill, couldn't place someone in the cell with plaintiff. Cell 124 held one bunk.

19. On or about the middle of October, 2010, plaintiff spoke with Dr. Frayne through his cell door about his concerns with moving to 3-East, phase two of the A.S. program, and remaining on single cell status.

20. Dr. Frayne stated, plaintiff was on his "list" of single cells.

21. On the morning of 10-28-10, plaintiff was called out to the interview room by mental health worker Eileen Redden and two unknown female "doctors".

22. Redden informed plaintiff that she had met with Cpt. Cahill, and that he told her that plaintiff would be moving up the hall to phase two of the program due to his good behavior, and that plaintiff would remain on single cell status.

23. On or about an hour or so, on the morning of 10-28-10, after meeting with mental health worker Redden, plaintiff was told by the officers working the unit to pack up, he was moving to 3-East with an inmate Walker.

24. Lieutenant Saylor was touring the unit and plaintiff addressed his concerns with him, informing Saylor that plaintiff was just told by mental health he was to be remaining on single cell and that he, Saylor, needed to call mental health.

25. Lieutenant Saylor took no action.

26. Plaintiff informed the officer working the unit that he needed to speak to mental health, it was an emergency.

27. Mental health worker Jill Haga refused to see plaintiff, instead called his cell over the intercom.

28. Plaintiff explained the issue to Jill Haga and she said she didn't handle those issues and blew plaintiff off, hanging up.

29. On or about 12:30 p.m. or 1:00 p.m., on 10-28-10, plaintiff was moved from phase one of the A.S. program in 1-East to phase two in 3-East.

30. Plaintiff was placed in the cell with inmate Walker.

31. Plaintiff addressed his concerns with officer Lindsey and Robinson.

32. Plaintiff was handcuffed and removed from the cell by officers Lindsey and Robinson.

33. Plaintiff was told by officers, while being led down the tier, that Cpt. Marinelli said to place him back in the cell with Walker,

34. Plaintiff was turned around and replaced back in cell 112 with Walker.

35. Officers Lindsey and Robinson uncuffed inmate Walker through the trap in the door while plaintiff was still handcuffed behind his back.

36. Inmate Walker, a known gangmember, with a history of assault, then proceeded to assault the plaintiff while he was defenseless with his hands cuffed behind his back.

37. Officers Lindsey and Robinson looked on, taking no action while plaintiff was beaten.

38. After several agonizing and terrifying minutes, plaintiff passed out.

39. Next thing plaintiff knew, he was being snatched off the ground by correction officers and thrust up against the wall, while still dizzy, as if he had done something wrong.

40. Plaintiff was never examined inside the cell, by on scene medical personnel, who was Paul Wilbur.

41. Plaintiff was led to the Medical Screening Room where instead of being questioned about the assault on him, he was told by Cpt. Marinelli, he would be receiving another cell partner which plaintiff took as a direct threat.

5

42. Plaintiff was led back to cell 112 without receiving proper medical care by on scene personnel, Paul Wilber.

43. Plaintiff suffered injuries to head and face, knee and back. He had lingering physical injuries and permanent psychological ones.

44. On or about the morning of 10-29-10, Cpt. Marinelli again told plaintiff he was receiving a cell-partner-which plaintiff took as another threat against his safety.

45. On or about 11-2-10, plaintiff addressed his single cell issue with Deputy Warden Powers, and the assault, while she was touring the unit, and was told it would be taken care of.

46. On or about 11-9-10, while Powers was again touring, plaintiff again addressed concerns with Powers, and was informed she had received and E-Mail from Redden and that Cpt. Marinelli could not place anyone in the cell with him, right in front of Marinelli.

47. Plaintiff, a few days later, addressed his concerns about being housed with known gangmembers, after Walker, a known gangmember had assaulted him, and was told by Marinelli to go lay down and shut up, he would be receiving another cell partner which plaintiff again took as a threat.

48. Plaintiff met with mental health worker Redden on or about the end of November and was informed he would remain on single cell status and that Redden didn't know what happened, "Plaintiff was supposed to be in a single cell."—which plaintiff believed Redden was attempting to cover herself.

49. Plaintiff continued to be treated by mental health worker Redden over the following months.

50. On or about the end of January, beginning of February, after progressing through to phase three of the A.S. program, plaintiff again met with Redden and was informed by Redden that Marinelli had been pushing her to take me off single cell status, but that she, Redden, had told him no. Plaintiff again took Marinelli's attempt to get him taken off single cell as another threat on his person.

51. Cpt. Marinelli continued to threaten plaintiff with a cell partner for his duration at Northern, complicating plaintiff's mental health disease.

52. Upon information and belief, plaintiff alleges that he was set up by mental health and the D.O.C.'s employees. Plaintiff alleges, once the assault had occurred, mental health workers became "scared" and placed plaintiff back on single cell status.

53. Upon information and belief, plaintiff alleges, D.O.C. employees, either conspired with mental health and Redden, or lied to Redden, knowing she would pass on the information to plaintiff, in order to get him to behave and move to 3-East, phase two of the program.

54. Northern has a history of these type of serious assaults being perpetrated by inmates against their cell partners while they are handcuffed behind their backs and Northern staff members continue to place inmates in these unsafe and dangerous conditions.

55. Upon information and belief, plaintiff was not the first inmate at Northern to be "set up" by staff members.

56. Plaintiff continues to suffer from physical injuries and serious psychological issues.

## V.   EXHAUSTION OF LEGAL REMEDIES (F)

57. Plaintiff, RASHAD WILLIAMS, used the prisoner grievance procedure available at Norther to try and solve the problem. On 11-24-10, 4-11-11, 2-16-11, the plaintiff RASHAD WILLIAMS, presented facts relating to this complaint. On 12-6-10, 3-3-11, 5-10-11, plaintiff, RASHAD WILLIAMS, was sent a response saying that the grievance had been denied.  ON 12-9-10 he appealed the denial of the grievance.

## VI.   LEGAL CLAIM (G)

58. Plaintiff realleges and incorporates by reference paragraphs 1-57.

59. The assault, deliberate indifference to medical needs, and unsafe conditions violated the plaintiff, RASHAD WILLIAMS' rights and constituted cruel and unusual punishment, a due process violation under the Eighth and Fourteenth Amendment to the United States Constitution.

60. The Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein.  Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this court grants the relief which this plaintiff seeks.

## VII. PRAYER FOR RELIEF (H)

WHEREFORE, Plaintiff respectfully prays that this court enter judgment granting plaintiff:

61. A permanent injunction barring the defendants, their employees, employers, agents, and officials from placing another inmate inside the cell with the plaintiff.

62. A permanent injunction barring the defendants, their employees, employers, agents, and officials from placing an inmate inside a cell handcuffed with an un-cuffed inmate for any period of time.

63. Compensatory damages in the amount of 1,000,000 against each defendant, jointly and severally.

64. Punitive damages in the amount of 1,000,000 against each defendant.

65. A jury trial on all issues triable by jury.

66. Plaintiff's cost in this suit.

67. Any additional relief this court deems just, proper, and equitable.

Dated: _[signature]_  7-1-16

PLAINTIFF, RASHAD WILLIAMS

By: _R. Williams_

~~John L. Laudati, Esq.~~
~~Murphy Laudati Kiel Butler & Rattigan, LLC~~
~~10 Talcott Notch,~~ Suite 120    Rashad Williams
~~Farmington, CT 06032~~           900 Highland Ave,
~~Fed Bar No. ct00043~~            Cheshire, CT, 06110
~~E-mail: jlaudati@mlkbr.com~~
~~Tel: (860) 674-8296~~
~~Fax: (860) 674-0850~~

VERIFICATION (J)

Plaintiff, Rashad Williams has read the foregoing complaint and hereby verifies that the matters alleged therein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true. Plaintiff, Rashad Williams under penalty of perjury that the foregoing is true and correct.

Opposing counsel has been contacted and objects to this Amended Complaint

Executed at Cheshire, C.I., Cheshire, CT on _____ 7-1___, 2016

_R. Williams_
Rashad Williams

The plaintiff also moves pursuant to Haines v. Kerner, 404 U.S. 519, 92 S. Ct. 594 (1972)

10

## Certification

I hereby certify a copy of the following was sent, on this day of July, 1st, 2016, to the attorneys of record.

DeAnn S. Varunes, AAG
110 Sherman Street
Hartford, CT. 06105

R. Wms.
Rashad Williams
900 Highland Ave.
Cheshire, CT. 06410
7-1-16

11