UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RASHAD WILLIAMS | | |
| | Plaintiff, | Case No.: 3:13-cv-01154-MPS |
| v. | | |
| PETER MURPHY, ET AL., | | |
| | Defendants. | AUGUST 17, 2017 |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
### MOTION FOR AID OF JUDGMENT

Pursuant to Rule 69 of the Federal Rules of Civil Procedure, plaintiff Rashad Williams

has respectfully requested that the Court declare that Connecticut's cost of incarceration statute,

codified at Conn. Gen. Stat. § 18-85b, conflicts with 42 U.S.C. § 1983 in such a way as to stand

as a substantial obstacle to Congress's goals and that, as a result and as applied to Williams's

judgment, §18-85b is preempted by federal law.

Williams further respectfully requests that the Court order the State of Connecticut to pay

the remainder of the outstanding judgment.

### FACTUAL BACKGROUND & PROCEDURAL HISTORY

#### A.     The Underlying Litigation.

This Court set forth the factual background of this civil rights litigation in great detail in

its Ruling on Post-Verdict Motions. (Dkt. No. 214) (the "Ruling"). Therefore, given the Court's

familiarity with the facts, Williams reiterates only those portions that bear directly on the instant

motion.

At all relevant times, Williams was an inmate at Northern, the most secure prison in

Connecticut's prison system. (Ruling at pg. 5). Prior to the events in question, Williams was

housed without a cell mate. (*Id*. at pg. 6). During that time, Williams expressed fears about threats he was receiving from gang members, about receiving a cellmate, and about the sequential uncuffing practice utilized at Northern (a practice that had played a role in an "abundance of assaults" at Northern). (*Id*. at pgs. 7-9).

On October 28, 2010, in connection with a transfer to Phase II of the prison's Administrative Segregation program and over his objections to being housed with a cell mate, Williams was moved to a new cell that he was to share with inmate Darnell Walker. (*Id*. at pgs. 9-14). Walker was an active member of the Bloods gang who was designated by the Department of Corrections as a "Security Risk Group Threat Member," meaning that he "had engaged in violence in the prison system and who 'potentially pose[d] a threat to institutional operations.'" (*Id*. at pg. 11). Williams was handcuffed behind his back when he was placed in the cell with Walker. (*Id*. at pg. 13). Walker was uncuffed first and, before Williams's handcuffs were removed, Walker assaulted Williams, kicking and stomping him. (*Id*.). Williams suffered "wounds to his face and head, as well as injuries to his ankle and back and exacerbation of a preexisting knee injury." (*Id*. at pg. 13). Following the assault, an angry Walker said on video that correctional staff "'knew what [they] were doing" when they put him into a cell with an inmate 'on single cell status doing 30 years.'" (*Id*. at pgs. 13-14).

Defendant Captain Dennis Marinelli was in charge of Phase II. (*Id*. at pg. 5). In that role, Marinelli examined information about each inmate that was to be transferred to Phase II and discussed incoming inmates with the manager of Phase I . (*Id*. at pgs. 9-10). Marinelli also worked with the prison's mental health staff in connection with decisions concerning inmates. (*Id*. at pg. 10). Given his familiarity with inmates being placed under his control, Marinelli would have known about Walker's disciplinary history. (*Id*. at pg. 11). It was Marinelli that, on

the day of the assault, ordered that Williams share a cell with Walker when Williams initially expressed reservations, threatening Williams with a disciplinary report and a potential return to Phase I of the Administrative Segregation program. (*Id*. at pg. 12).

Immediately following the assault, Marinelli approached Williams and "told him that he would receive another cellmate and that Williams 'didn't dictate cell assignment in his unit.'" (*Id*. at pg. 14). Marinelli's practice of threats continued. Marinelli

> repeatedly threatened to place [Williams] with a cellmate while he was in Phases II and III. Marinelli told the other inmate – also a gang member – that he was going to be housed with Williams. Even after Deputy Warden Powers specifically told Marinelli that he could not place anyone in the cell with Williams – following a written complaint by Williams about Marinelli's threats – Marinelli continued to tell Williams he would receive a cellmate…When Williams complained about being housed with gang members, Marinelli told him to 'shut up' and to lie down on his bunk.

(*Id*.).

Williams commenced this action under 42 U.S.C. § 1983 against Defendant Dennis Marinelli ("Marinelli"), among others. (Dkt. No. 1). Williams alleged that Marinelli's actions violated his rights under the Eighth Amendment. At all relevant times, and throughout trial, Defendant Marinelli was represented by members of the Connecticut Attorney General's office. (*See* Dkt. Nos. 21, 32, 82, 89).

The case was tried to a jury from July 13, 2016 to July 19, 2016. On July 19, 2016, the jury determined that Marinelli had violated Williams's rights under the Eighth Amendment by being deliberately indifferent to his physical safety. (Dkt. No. 176 at pg. 1). The jury awarded Williams $250,000 in compensatory damages and $400,000 in punitive damages. (*Id*. at pgs. 2-3).

**B.** **Post-Verdict Motions.**

Following the jury's verdict, Marinelli moved under Federal Rules 50 and 59 for judgment as a matter of law, a new trial, and remittitur. (Dkt. No. 190). On February 8, 2017, the Court, in relevant part, denied Marinelli's motion for judgment as a matter of law and Marinelli's motion for a new trial. (Ruling at pg. 1-3). The Court also denied Marinelli's motion for remittitur as to the compensatory damages award of $250,000. (*Id*. at pg. 3). The Court granted Marinelli's motion for remittitur as to the punitive damages, ordering a new trial on damages unless Williams agreed to remit the punitive damages award to $50,000. (*Id*.). Williams accepted the remitted amount of punitive damages on February 15, 2017 (Dkt. No. 216), bringing the total amount of the final award to $300,000.[1]

At the same time as Marinelli's post-trial motions, Williams filed a motion objecting to the State of Connecticut's anticipated claim for repayment of his costs of incarceration that the State would attempt to offset from the judgment against Marinelli. (Dkt. No. 185). The State objected, arguing that the cost of incarceration issue was not yet ripe. (Dkt. No. 196). Given the possibility that Marinelli would appeal, the Court denied Williams's motion "without prejudice to his refiling the motion when issues arising from collection of the judgment become ripe." (Ruling at pgs. 60-61).

**C.** **Marinelli's Appeal.**

Marinelli filed his Notice of Appeal to the Second Circuit in March 2017. Two days after his brief was due, Marinelli filed a motion to withdraw his appeal. The Second Circuit granted Marinelli's motion on July 5, 2017 and thereafter issued a mandate that was docketed with this Court on July 11, 2017. (Dkt. No. 231).

---

[1] The parties agree that Williams's award is subject to a child support lien of $15,140. Therefore, the amount of the award currently in dispute, and prior to the application of any available interest, is $284,860.

**D.     The State's Post-Appeal Actions Concerning The Judgment.**

Following the State's withdrawal of the action, Williams's counsel reached out to Attorney DeAnn Varunes at the Attorney General's office to discuss the cost of incarceration issue, which had ripened upon the withdrawal of the appeal, and proposed jointly contacting the court to set a briefing schedule. (Ex. 1 at pg. 3). Attorney Varunes did not agree to allow the Court to resolve the cost of incarceration issue, but rather indicated that she had "requested the State of Connecticut, Office of the Comptroller to immediately issue three checks" that reflected the State's withholding of 50% of the judgment for cost of incarceration and the deduction of a child support lien. (*Id*. at pg. 2).

Counsel for Williams replied to Attorney Varunes that same day, reminding her that a dispute existed between Williams and the State concerning the appropriate application of the cost of incarceration issue and requesting that the State not issue any payments at that time. (*Id*. at pg. 1). Counsel for Williams also requested that Attorney Varunes provide a calculation for the interest to be included with the award, as well as any legal authority in support of her assertion that the Court lacked jurisdiction to address the cost of incarceration dispute. (*Id*.). Attorney Varunes did not respond.

On July 26, 2017, the parties held a telephonic status conference with the Court to discuss the cost of incarceration issue. (Dkt. No. 239). At no time during that call did any of the three attorneys from the Attorney General's office indicate that, notwithstanding the pendency of the cost of incarceration dispute, the State intended to issue payment immediately. Nevertheless, on the very next day, Attorney Varunes wrote to the Department of Correction enclosing a check in the amount of $142,430 with instructions that it be deposited in Williams's inmate account. (Ex.

2 at pg. 1). Attorney Varunes represented that "[t]his check represents payment in full of the above-referenced matter." (*Id*.).[2] Attorney Varunes did not include Williams's attorneys on this correspondence. The check was deposited into Williams's inmate trust account on August 1, 2017. (Screenshot of Williams' Trust Account, Ex. 3 at pg. 1). Notice of this deposit was not given to Williams's counsel by the Attorney General's office.

## APPLICABLE LAW

### A.    Applicable Preemption Doctrine.

The Supremacy Clause of the United States Constitution "invalidates state laws that interfere with, or are contrary to federal law." U.S. Const. art. VI, cl. 2; *Air Transport Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 220 (2d Cir. 2008). Three types of preemption exist: (1) express preemption; (2) field preemption; and (3) conflict preemption. *New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010). Williams's challenge to Conn. Gen. Stat. § 18-85b implicates conflict preemption.

Conflict preemption occurs "where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives." *New York SMSA Ltd.*, 612 F.3d at 104. The latter subset of conflict preemption, known as obstacle preemption, is at issue in this case. *See Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 162 (2d Cir. 2013); *Goonan v. Fed. Reserve Bank of N.Y.*, 916 F. Supp. 2d 470, 492 (S.D.N.Y. 2013).

In obstacle preemption cases, courts must first divine Congress's goals and objectives in passing a particular federal statute by examining legislative history and the language of the statute itself. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liability Litig.*, 725 F.3d 65,

---

[2]    Williams contests the assertion that the check represents "payment in full" of the judgment. Not only is the costs of incarceration issue still pending, but interest on the judgment must also be calculated.

102-03 (2d Cir. 2013). Then, the challenged state law is analyzed to determine whether it

constitutes a "sufficient obstacle" to the purpose of the federal law to be preempted. *Id.* at 101-

02. What constitutes a "sufficient obstacle" to warrant preemption is "a matter of judgment, to be

informed by examining the federal statute as a whole and identifying its purpose and intended

effects." *Id.* at 101. In such a case, the party challenging the constitutionality of the statute must

demonstrate that the conflict between the two acts is a "sharp one." *Marsh v. Rosenbloom*, 499

F.3d 165, 178 (2d Cir. 2007).

### B.     42 U.S.C. § 1983 – Civil Action for Deprivation of Rights.

42 U.S.C. § 1983 provides, in relevant part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State . . . subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured by the Constitution and laws, shall
> be liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress . . .

The purpose of § 1983 is two-fold: "to deter state actors from using the badge of their

authority to deprive individuals of their federally guaranteed rights and to provide relief to

victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

### C.     Connecticut's Cost of Incarceration Statute – Conn. Gen. Stat. § 18-85b(a).

Connecticut General Statute § 18-85b(a) gives the State of Connecticut a lien of 50% of

the proceeds of specific recoveries. The statute provides:

> In the case of causes of action of any person obligated to pay the costs of such
> person's incarceration under section 18-85a and regulations adopted in
> accordance with said section brought by such person within twenty years from the
> date such person is released from incarceration, the claim of the state shall be a
> lien against the proceeds therefrom in the amount of the costs of incarceration or
> fifty per cent of the proceeds received by such person after payment of all
> expenses connected with the cause of action, whichever is less, for repayment
> under said section, and shall have priority over all other claims…The proceeds of
> such causes of action shall be assignable to the state for payment of the amount

due under section 18-85a, and regulations adopted in accordance with said section, irrespective of any other provision of law. The state's lien shall constitute an irrevocable direction to the attorney for such person to pay the Commissioner of Correction or the commissioner's designee in accordance with its terms…

## ARGUMENT

### A.    The Court Has Inherent Authority To Enforce The Judgment.

Federal Rule of Civil Procedure 69(a) provides that:

A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.[3]

Moreover, this Court retains inherent power to make appropriate orders concerning the enforcement of judgments it renders. As the Supreme Court held in *Riggs v. Johnson Cty.*, 73 U.S. (6 Wall.) 166, 187 (1868):

The rule is universal, that if the power is conferred to render the judgment or enter the decree, it also includes the power to issue proper process to enforce such judgment or decree. . . The jurisdiction of a court is not exhausted by the rendition of the judgment, but continues until that judgment shall be satisfied.

*See also Peacock v. Thomas,* 516 U.S. 349, 356 (1996) (noting that the Supreme Court has "approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties" to enforce federal judgments); *Argento v. Melrose Park*, 838 F.2d 1483, 1487 (7th Cir. 1988); *Spain v. Mountanos*, 690 F.2d 742, 747 (9th Cir. 1982) (recognizing district court's plenary power to enforce its commands); *Plunket v. Estate of Doyle*, 2009 U.S. Dist. LEXIS 1990, at *5-6 (S.D.N.Y. Jan. 12, 2009) (holding that Rule 69 "provides a

---

[3]    Although § 1983 provides no mechanism for enforcement of a judgment, Conn. Gen. Stat. § 52-350 *et. seq.* provides that a court retains post-judgment jurisdiction to ensure the satisfaction of a judgment.

mechanism for parties to seek the Court's aid in executing its judgments . . . . A federal court has

an inherent power to enforce its judgments.").[4]

Neither Marinelli nor the State of Connecticut can credibly argue that this Court lacks the

authority to address Williams's attempt to recover the full amount of his judgment. This is

particularly true given that the Connecticut Attorney General's office provided Marinelli with a

defense throughout the underlying litigation, and that the State of Connecticut, through the

Office of the Comptroller, is voluntarily paying the judgment assessed against Marinelli.

**B.      As Applied To Williams's Award, Conn. Gen. Stat. § 18-85(b) Is Preempted
         By 42 U.S.C. § 1983.**

The facts of Williams's § 1983 case and his subsequent efforts to collect the full amount

of his judgment are startlingly similar to the facts presented in *Hankins v. Finnel*, 759 F. Supp.

569 (W.D. Mo. 1991). In that case, plaintiff Ronald Hankins brought a § 1983 action against

defendant William Finnel. Hankins alleged that Finnel had sexually harassed Hankins while

Hankins was an inmate in the Missouri State Penitentiary and while Finnel was employed as a

teacher there. *Id*. at 570. Finnel was represented by the Attorney General's office at trial, and was

indemnified by the State of Missouri. *Id*. Following trial, a jury found for Hankins and awarded

him $1.00 in nominal damages and $3,000 in punitive damages. *Id*. The State of Missouri sought

to recover 90% of Hankins's award under the Missouri Incarceration Reimbursement Act. *Id*.

Hankins challenged the state's attempt to reduce his award.

Applying a Supremacy Clause analysis to the potential conflict between § 1983 and

Missouri's cost of incarceration statute, the district court concluded that:

> Essentially, the State has conducted a 'shell game': with slight [sic] of hand, the
> State has maneuvered the money judgment owed Mr. Hankins from one shell to
> another. As applied in this instance, the Missouri Incarceration Act would protect

---

[4]      Federal Rule of Civil Procedure 70, which provides that a court may enforce a judgment by ordering a
specific act to be done, also provides the Court with jurisdiction over this matter.

the State of Missouri and its employees from ever suffering the intended effect of a punitive award under Section 1983 and would leave Mr. Hankins with no prospect of receiving his judgment.

Section 1983 preempts Missouri's Incarceration Reimbursement Act as applied in this case, because the Act conflicts with Congress's intent to compensate victims of past abuse and to deter future violations of constitutional and federal rights. Application of the Act to authorize forfeiture of money paid by the State for damages in a civil rights action against a state employee is invalidated. Especially in a case such as this where the damages are punitive, preemption of the Act is required to deter other state employees from violating prisoners' federal rights.

*Id*. at 574.

The district court concluded that if Missouri were to be permitted to recover its claimed costs of incarceration in Hankins's case, "neither the State nor its employees would have the incentive to comply with federal and constitutional rights of prisoners." *Id*. The district court invalidated that portion of the Missouri statute. *Id*. The State of Missouri appealed.

The Eighth Circuit affirmed the judgment, holding that, as applied to Hankins's case, Missouri's cost of incarceration statute was preempted by § 1983. *Hankins v. Finnel*, 964 F.2d 853 (8th Cir. 1992). The Eighth Circuit first noted that "[t]he purpose of section 1983 is two-fold: to compensate victims and to deter future deprivations of federal constitutional rights." *Id*. at 861 (citing *Owen v. City of Independence*, 445 U.S. 622, 651 (1980)). The court noted that "[t]o allow the State to largely recoup this award would be inimical to the goals of the federal statute," and echoed the district court's conclusion that neither the State of Missouri, nor its employees, would have an incentive to comply with the federal and constitutional rights of prisoners if the state could then withhold 90% of the judgment recovered under § 1983.

As in *Hankins*: (1) Williams was incarcerated by the state at the time of the deprivation of his constitutional rights; (2) Williams was deprived of his rights by a state employee - Marinelli; (3) the matter was tried to a jury which rendered a verdict for Williams against Marinelli; (4) the

verdict included a substantial punitive damages component; (5) the state provided Marinelli with a defense throughout the underlying litigation; (6) the state has indemnified Marinelli by paying (a portion of) the judgment against him; and (7) the state has attempted to withhold from Williams a sizeable portion of his § 1983 award.

The logic embraced by the Eighth Circuit in *Hankins* applies with equal force in this case. To permit the State of Connecticut to reduce its liability, and the liability of its employees, for constitutional deprivations occurring in its prisons would be inimical to the joint goals – compensation and deterrence – of § 1983. Connecticut's cost of incarceration statute stands as a sharp obstacle to the achievement of the goals of § 1983, and is therefore, for the purposes of Williams's award, preempted. Because § 1983 preempts Conn. Gen. Stat. § 18-85b(a) as applied to Williams, the State is not allowed to withhold or offset any portion of the judgment owed to Williams (including interest yet to be calculated).

## CONCLUSION

For the foregoing reasons, Plaintiff Rashad Williams respectfully requests that the Court order that his judgment not be reduced through application of Conn. Gen. Stat. § 18-85b, and that the State of Connecticut pay him the remainder of the judgment.

Respectfully submitted,

**PLAINTIFF**
**RASHAD WILLIAMS**

By:   */s/ J. Tyler Butts*
       Linda L. Morkan
       J. Tyler Butts
       ROBINSON & COLE LLP
       280 Trumbull Street
       Hartford, CT  06103-3597
       Tel:  860-275-8200
       Fax:  860-275-8299

## CERTIFICATION

I hereby certify that on August 17, 2017 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Furthermore, pursuant to Federal Rule of Civil Procedure 5.1(a)(2), I certify that a copy of the foregoing was sent via certified mail to:

Attorney General George Jepsen
55 Elm Street
Hartford, CT 06106


By:    */s/ J. Tyler Butts*
        J. Tyler Butts