UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RASHAD WILLIAMS

Plaintiff,

v.

PETER MURPHY, ET AL.,

Defendants.

Case No.: 3:13-cv-01154-MPS

JANUARY 31, 2018

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF MOTION FOR AID OF JUDGMENT**

Pursuant to Rule 7(d) of the Local Rules of Civil Procedure, plaintiff Rashad Williams submits this Reply in further support of his August 17, 2017 Motion for Aid of Judgment (Dkt. Nos. 240-241) (the "Motion") and in response to the State of Connecticut's January 17, 2018 "Response to this Court's Order Re: Intervention." (Dkt. No. 268) (the "Opposition").[1] Rather than address the actual substance of the Motion, the majority of the Opposition attempts to remove the issue from this Court's consideration entirely. For the reasons set forth below, the State's attempt to escape this Court's jurisdiction must fail. Similarly, the Opposition fails to meaningfully distinguish *Hankins v. Finnel* from the facts of this case, and instead relies on inapplicable and factually-distinguishable case law in an unsuccessful effort to argue that § 18-85b does not conflict with § 1983 with respect to the judgment Williams obtained against Marinelli.

**A. This Court Has Jurisdiction to Address the Issues Raised in the Motion.**

From its first sentence, the Opposition mischaracterizes the nature of Williams's Motion and the constitutional question raised therein in a transparent attempt to avoid this Court's

[1] No other party or entity filed a response to Williams's Motion.

jurisdiction. Williams's Motion is not, as the Opposition claims, an attempt to "make the State of Connecticut a new party to this litigation" or to "obtain[] retrospective monetary relief" from the State. (Opposition at pg. 1). As set forth in the Motion, the accompanying notice of constitutional question (Dkt. No. 242), and the Court's Order with request to that constitutional question (Dkt. No. 243), the operative issue is whether "Conn. Gen. Stat. § 18-85b conflicts with 42 U.S.C. § 1983 in such a way as to stand as a substantial obstacle to Congress's goals and whether Conn. Gen. Stat. § 18-85b is therefore preempted by federal law as applied to Plaintiff's judgment in this case." (Dkt. No. 243).

The Opposition repeatedly attempts to cast the Motion as an attempt by Williams to recover "retrospective" relief against the State. (Opposition at pg. 1; *id.* at pg. 10 (describing the amount implicated by the constitutional challenge as monies that the State has "previously recouped"); *id.* at pg. 12 (describing "monies that the State already has taken")). The Opposition even has the boldness to claim that "[d]espite the fact that *the State's enforcement of its cost of incarceration liens is done and over*, Plaintiff now seeks to recover that money by dragging the State into this litigation post-judgment…." (Opposition at pg. 11) (emphasis added). What the Opposition fails to mention, however, is that this is a problem entirely of the State's own making. As set forth in detail in the Motion, Williams attempted to raise his constitutional challenge to the application of the cost of incarceration statute at the time the parties filed their post-trial motions. (*See* Dkt. Nos. 185, 241 at pg. 4). At that time, the State objected on the ground that the issue was not ripe. (*See* Dkt. Nos. 196, 241 at pg. 4.). Following the withdrawal of the State's appeal to the Second Circuit, and prior to any payments on the § 1983 judgment being made to Williams, Williams's counsel reached out repeatedly to the State to address the

cost of incarceration issue; in fact, the parties discussed the issue with the Court in July 2017. (Dkt. Nos. 239, 241 at pg. 5).[2]

Despite this, the State unilaterally decided to deposit into Williams's account only a portion of the award entered against Marinelli. (Dkt. No. 241 at pgs. 5-6). Having failed to timely address the issue, and having instead made a partial payment of Marinelli's judgment to Williams over the objection of counsel, the State **now** claims that Williams's Motion is untimely because the State has, in its own words, "recouped" a portion of the judgment owed to Williams by Marinelli (an event that presumably happened the instant the partial payment was made). Under the Opposition's temporal shell game, Williams's challenge to the application of the cost of incarceration statute was always too early or too late, and could therefore never have been timely. The State cannot avoid this Court's jurisdiction so easily, nor should the State be permitted to invoke the Eleventh Amendment given its actions in connection with the payment of the § 1983 judgment assessed against Marinelli.

In advancing the dubious proposition that this Court lacks the power to consider a constitutional challenge to a state statute in this action, the Oppositions relies on the Eleventh Amendment. (Opposition at pgs. 4-14). Even if the Court were to agree that the Eleventh Amendment is implicated in this case, the State has waived its immunity with respect to the payment of the judgment that was assessed against Marinelli. In fact, the Eighth Circuit considered, and rejected, the argument advanced by the Opposition in *Hankins v. Finnel*.

As set forth in *Hankins*, a state may waive its Eleventh Amendment immunity though its conduct. 964 F.2d at 856. Moreover, an Eleventh Amendment waiver may be partial or limited. *Id*. In fact, as the *Hankins* court noted, the operative question in assessing a potential waiver of

[2] Counsel for Williams also specifically asked counsel for the State that it "not issue any checks at this time" so that the cost of incarceration issue could be addressed. (Dkt. No. 241-1 at pg. 1).

Eleventh Amendment protections was "whether the State's actions in satisfying Hankins' judgment and then immediately attempting to recoup it can be deemed a limited waiver of immunity *solely with regard to the judgment*." *Id*. at 857 (emphasis in original). As in this case, the State of Missouri in *Hankins* "agreed to pay Hankins' judgment, [but then] it voluntarily and deliberately took actions designed to ensure that the money never reached Hankins' hands." *Id*. The Eighth Circuit noted that the state's actions left the plaintiff inmate "with little more than a 'stealth' payment–the judgment proceeds vanished before Hankins even knew he had been paid." *Id*. at 858. In concluding that the State of Missouri had made a limited waiver of its Eleventh Amendment protections with respect to collectability of the § 1983 judgment, the Eighth Circuit noted:

> The State, acting under statutory authority, represented Finnel at all stages of the litigation and agreed to indemnify him. It then "paid" the judgment, but not before instituting a state court proceeding attempting to recoup it. The State took these actions ex parte despite its knowledge that Hankins was represented by counsel. The ledger sheet from Hankins' inmate account lists a $ 3,234.22 debit for "Cell Reimbursement" just before it lists the credit from the State of Missouri in the identical amount. The debit and credit were both entered on August 20, 1990, about three weeks before the State notified Hankins of its actions. In sum, the State acted to the advantage of and for the benefit of itself.

*Id*. The actions of the State of Connecticut in this case are strikingly similar, and perhaps more egregious, than the actions of the State of Missouri described above. The State of Connecticut represented Marinelli at all stages of the litigation, agreed to indemnify Marinelli, and failed to pay the full amount of the judgment assessed against Marinelli, all while stonewalling Williams's efforts to raise the issue with this Court. To the extent the Motion raises Eleventh Amendment concerns, the State, through its actions, has effected a limited waiver that permits the Court to make certain orders related to Williams's § 1983 judgment.[3]

[3] In fact, the State has responded to the Court's invitation to intervene with respect to the question raised by the Motion. (Dkt. No. 243). That the State has curiously labeled its Opposition a "Response" to the "Court's Order

**B. The Opposition Fails to Distinguish *Hankins*.**

The portion of the Opposition that addresses the substantive portion of the Motion misses the mark and, in so doing, raises a number of largely irrelevant arguments. The Opposition first appears to argue that Williams's position – that § 18-85b conflicts with § 1983 – is inconsistent because Williams did not object to a portion of the § 1983 judgment being allocated to a child support arrearage. (Opposition at pg. 17). The Opposition continues that "[i]t is hard to distinguish the difference between the two debts [child support and cost of incarceration] owed and why paying off one is consistent with § 1983's compensation goal by paying the other somehow is not." (*Id*.). This argument is, at best, disingenuous. As set forth in the Motion, one of the motivating factors behind the Eighth Circuit's decision in *Hankins* was the fact that it was the State that was reducing its own liability by taking money out of one pocket to pay a § 1983 judgment and, in the same action, putting that money in another pocket, thereby reducing the amount of the judgment for which it was responsible. Payment of money to an unrelated third-party, *i.e*., in connection with a child support obligation, does not raise the same concerns as the State's attempt to reduce its own liability by enforcing a cost of incarceration claim that has the practical effect of the State keeping money for itself.

The Opposition next claims that, because Congress has not taken action with respect to various states' cost of incarceration statutes, Congress either approves of the practice, or does not find the practice to conflict with § 1983. (Opposition at pgs. 19-20). This argument appears to be pure speculation based on the enactment of un-related prison reform litigation, and does not

---

re: Intervention" cannot change the fact that the State has intervened in this action in response to the opportunity afforded it by Federal Rule 5.1, further weakening its contention that it is being dragged into this litigation against its will.

The *Hankins* court also noted that, "even without the existence of the waiver, Hankins still would be entitled to proceed in district court. Although the district court could not, in the absence of a waiver, enjoin the *State* from attaching Hankins' funds, it could enjoin *state officials*." *Id*. at 859 (emphasis in original).

assist in resolving the Motion's preemption question. The Opposition's discussion of federal cost of incarceration liens when, as the Opposition admits, § 1983 does not apply to the federal government, is equally unhelpful. (Opposition at pg. 21).

The Opposition only discusses the Eighth Circuit's decision in *Hankins* in its final two-and-a-half pages. (*Id*. at pgs. 21-23). The Opposition first claims that *Hankins* is factually distinguishable, but fails to explain precisely why that is the case. That failure to meaningfully distinguish *Hankins* from the facts presented here is understandable, given that, as in *Hankins*: (1) Williams was incarcerated by the state at the time of the deprivation of his constitutional rights; (2) Williams was deprived of his rights by a state employee; (3) the matter was tried to a jury which rendered a verdict for Williams; (4) the verdict included a substantial punitive damages component;[4] (5) the state provided its employee with a defense throughout the underlying litigation; (6) the state has indemnified its employee by paying (a portion of) the judgment against him; and (7) the state has attempted to withhold from Williams a sizeable portion of his § 1983 award.

Similarly, the Opposition's argument that *Hankins* has been confined to its "unique factual situation" (Opposition at pg. 22) only amplifies the distinct similarities the two cases share and highlights the fact that the Opposition fails to cite any case law involving similar facts to this case. Unlike the cases that the Opposition relies on, the Motion does not present a question concerning third-party victim restitution (*Beeks* & *Vincent*), or hospital bills (*Brown*), or public assistance (*Colondres*), or a situation where a municipality was forced to pay a § 1983 judgment that the state then attempted to collect (*Bonilla*). (Opposition at pgs. 22-23).

---

[4] The jury in this action apparently found Marinelli's conduct to be particularly egregious, leveling a punitive damages award of $400,000 against him before that amount was remitted. (Dkt. No. 214).

The Opposition's efforts to analogize the relief sought to factually distinct cases notwithstanding, it is clear that the Motion seeks to resolve the narrow question of whether § 1983 preempts § 18-85b as applied to Williams's judgment, *e.g.*, a § 1983 judgment awarded against a state employee, that the state elected to defend and indemnify, when the state then attempts to reduce the amount of that award that it has agreed to pay based on a cost of incarceration statute. For the reasons set forth in *Hankins*, a conflict between § 18-85b and § 1983 exists under the facts presented in this case, and the cost of incarceration statute is therefore preempted. *Hankins*, 964 F.2d at 861 ("To the extent that the Act permits the State to recoup the very monies it has paid to satisfy a section 1983 judgment against one of its employees, the Act is invalidated under the Supremacy Clause.").

Respectfully submitted,

**PLAINTIFF**
**RASHAD WILLIAMS**

By: */s/ J. Tyler Butts*
Linda L. Morkan
J. Tyler Butts
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel: 860-275-8200
Fax: 860-275-8299

**CERTIFICATION**

I hereby certify that on January 31, 2018 a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By: *[/s/ J. Tyler Butts]*
J. Tyler Butts